UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LISA R. MOLUMBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-04152-SLD |
| | ) |
| MARK AVERILL, Acting Secretary of the Department of the Army,[1] | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff Lisa R. Molumby, a former employee at the Rock Island Joint Manufacturing Technology Center ("JMTC"), part of the Rock Island Arsenal ("RIA"), asserts that the Army failed to accommodate her disabilities and thereby violated section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See generally* Compl., ECF No. 1. Pending before the Court is Defendant's Combined Motion and Memorandum in Support of Her Motion for Summary Judgment, ECF No. 22. For the reasons that follow, the motion is GRANTED.

BACKGROUND[2]

Plaintiff worked at the JMTC, which develops, manufactures, and delivers materials for the Army and Department of Defense. Michael Huebl, who became Plaintiff's first-line

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Mark Averill, Acting Secretary of the Department of the Army, is substituted for his predecessor. The Clerk is directed to update the docket.

[2] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, this factual background is drawn from Defendant's statement of undisputed facts, Mot. Summ. J. 2–22, Plaintiff's response thereto and her statement of additional material facts, Resp. Mot. Summ. J. 2–27, ECF No. 25, and Defendant's reply thereto, Reply Mot. Summ. J. 1–10, ECF No. 27. Defendant's first two exhibits, ECF Nos. 22-1–22-28 and ECF Nos. 22-29–22-33, are lengthy investigative files compiled in response to Plaintiff's two administrative complaints. When citing to a portion of these investigative files, the Court identifies: (1) a descriptive title for the document referred to; (2) whether it is included in the first or second investigative file; (3) the page numbers affixed by Defendant to the bottom-right corner of the document, omitting the preceding zeroes; and (4) the ECF page numbers. For subsequent citations, the Court identifies only the document's title, the investigative file, and the truncated page numbers.

supervisor in March 2020, supervised three groups of employees at JMTC: (1) Inventory; (2) Receiving; and (3) Defense Reutilization and Marketing Office. Some employees were General Schedule ("GS"), and others were Wage Grade. Plaintiff began her employment for Defendant in 2006 as a Wage Grade employee, and by 2019 she had achieved the position of a GS-07 Supply Technician in Inventory. She was a member of the American Federation of Government Employees Local 15. Beginning March 29, 2020, Plaintiff was temporarily promoted to GS-09 General Supply Specialist in Inventory. She was returned to GS-07 Supply Technician in Inventory when her promotion expired on September 28, 2021.[3]

Around the same time that Plaintiff was temporarily promoted, March 2020, Plaintiff and other JMTC employees were allowed to telework due to the COVID-19 pandemic. In January 2021, JMTC employees were instructed to physically return to the office—Plaintiff was the only Inventory employee who did not return. By this point, Plaintiff was seeking extensive medical treatment for certain conditions. At first, she complained of temporary losses of consciousness, *i.e.*, blackouts. *See, e.g.*, Oct. 26, 2020 Note from Dr. Mary M. Campbell, First File at 566, ECF No. 22-17 at 3 (stating that Plaintiff was "having medical issues and should not drive until th[ey] are resolved"); Locklear Investigative Summary, Second File at 131, ECF No. 22-31 at 52–64 (describing Plaintiff's statements that "[h]er black out episodes prevent[ed] her from driving to work" and that "[a]t one time her provider told her she should not drive until she ha[d] six months free of blackouts"). She went to the emergency room in November 2020, complaining of

---

[3] Plaintiff raises two factual disputes related to this temporary promotion's expiration. First, Plaintiff maintains that Tom Eagle, her former second-line supervisor, informed her when she was promoted to GS-09 that her temporary promotion was to be made permanent after five years of adequate performance. *See, e.g.*, Molumby Decl. ¶ 7, Resp. Mot. Summ. J. Ex. 1, ECF No. 25-1; Undated Facebook Messenger Screenshot, First File at 564, ECF No. 22-17 at 1. Second, Plaintiff asserts that she never received a standardized form notifying her that her temporary promotion had ended, instead finding out by noticing a reduction in her pay and emailing Huebl about that reduction. Molumby Decl. ¶ 11. These disputes are immaterial because Plaintiff explicitly waived claims concerning her "demotion" from GS-09 to GS-07. *See* Resp. Mot. Summ. J. 32 n.7 ("Plaintiff has decided to proceed only on her failure to accommodate claim and hereby waives her claim that her demotion was discriminatory or retaliatory.").

2

chest pains, and she attended multiple cardiology appointments in the following months. On February 9, 2021, two of her doctors wrote notes stating that she needed to telework due to her ongoing health issues. A week later, she formally requested that she be allowed to telework fulltime as a reasonable accommodation for her blackout episodes because she could not risk passing out behind the wheel during her commute.

Plaintiff's request for accommodation was "denied due to undue hardship upon the agency." Mar. 24, 2021 Mem. for Record, First File at 168, ECF Nos. 22-6 at 31–22-7 at 1. Instead, she was offered an alternate accommodation of telework for four out of five days a week for a few weeks. In April 2021, Plaintiff provided a note from another medical professional which stated that Plaintiff "cannot drive for 6 months from the last date of loss of consciousness," and that remote work should be considered, Apr. 9, 2021 Note from Heather Hitesman, Second File at 182, ECF No. 22-32 at 12, prompting an extension of Plaintiff's alternate accommodation. During this same period, pursuant to Equal Employment Opportunity Commission COVID-19 guidance, the essential functions of her position requiring physical presence were waived. The waiver was extended twice and ended on June 28, 2021.

On June 23, 2021, Plaintiff again requested full-time telework as a reasonable accommodation, but the basis for her request was no longer solely blackouts. Plaintiff had been diagnosed with a variety of mental conditions. *See, e.g.*, June 10, 2022 Family and Medical Leave Act ("FMLA") Certification, First File at 137, ECF Nos. 22-5 at 24–22-6 at 1 (listing "major depressive disorder, generalized anxiety, [and] mood disorder with psychosis" as "medical facts related to the condition(s) for which the employee seeks FMLA leave" (capitalization altered)). She was "hear[ing] and see[ing] things that [we]re not there," and experiencing "a sensation of people breathing down her neck, people holding onto her feet, and

doors creaking when she [wa]s alone." Locklear Investigative Summary, Second File at 131. Her anxiety and hallucinations were exacerbated by being around other people, as would be required in an office environment. She later stated as part of an administrative complaint: "I have manic episodes when I do see or hear things (so it is not safe for me to be around people) . . . ." Formal Complaint of Discrimination ARRIA22MAR01855, First File at 10, ECF No. 22-1 at 8–11. Plaintiff's request for fulltime telework was again denied, but she was approved to telework five days a week as a temporary accommodation for thirty days—this arrangement was "subject to change at any time." July 13, 2021 Mem. For Record, First File at 156, ECF No. 22-6 at 19–20. The temporary accommodation was extended multiple times, with the final extension being granted on February 28, 2022.

On March 1, 2022, Huebl emailed Plaintiff's union representatives to inform them that he intended to move Plaintiff from Inventory to Receiving. Plaintiff's temporary promotion to GS-09 had expired a few months prior, and GS-07 employees could be assigned to work in either Inventory or Receiving. After receiving no response from the union, Huebl informed Plaintiff the next day that he intended to move her from Inventory to Receiving. As justification for the move, he stated: "[W]e're failing in central receiving and you would be an asset to that team to catch up and stay ahead of material coming in." Mar. 2, 2022 Email from Huebl to Molumby, Second File at 29, ECF No. 22-29 at 29; *see also* Huebl Decl. ¶¶ 11–13, Mot. Summ. J. Ex. 5, ECF No. 22-36 ("At the time [Plaintiff] was moved to Central Receiving, Receiving was critically behind and other employees from other functions could no longer complete [Plaintiff]'s on-site tasks and their own.").

On March 3, 2022, Huebl informed Plaintiff that her latest request for fulltime telework, dated February 28, 2022, was again denied, and this time the alternate accommodation that was

4

being offered was only five days of telework every two weeks, not fulltime telework.  *See* Mar. 3, 2022 Mem. for Record, Second File at 36, ECF No. 22-29 at 36–37 ("Effective 14 March 2022, you will be required to report for duty on-site at RIA-JMTC on Monday, Wednesday, and Friday the first week of the pay period and Tuesday and Thursday the second week of the pay period.").  In-person presence was required "in order to receive training and perform those essential functions of [the] position [in Receiving] which c[ould] only be performed in person at RIA-MTC."  *Id.*  Later that month, Plaintiff's doctor provided updated FMLA paperwork which requested fulltime telework as an accommodation and predicted that Plaintiff's period of incapacity would end by June 10, 2022.  Mar. 25, 2022 FMLA Certification, First File at 471–72, ECF No. 22-12 at 34–37.  If telework was not an option, her doctor requested that "medical retirement" be considered.  Mar. 29, 2022 Letter from Dr. Babuji R. Gandra, First File at 469, ECF No. 22-12 at 33.

In an email memorializing a phone conversation Huebl and Plaintiff had on April 28, 2022, Huebl stated that Plaintiff informed him that she was unwilling to come into the office and receive training for her Receiving position because she could not "deal with people."  May 2, 2022 Email from Huebl to Molumby, First File at 177, ECF No. 22-7 at 9–10.  Huebl further stated that he was unable to "provide any workload for [Plaintiff's] telework days to support [her] 50% telework RA."  *Id.*  Finally, he recorded that they had discussed both a job search for telework-eligible positions that she could fill and her doctor's suggestion of medical retirement.  In a response email two days later, Plaintiff declined a job search based upon advice from her union representative.  Huebl conducted the search anyways, which returned no matches.

By June 10, 2022, Plaintiff's period of incapacity had not ended—updated FMLA paperwork no longer predicted when Plaintiff's incapacity would end and instead stated that

5

Plaintiff would indefinitely suffer from episodes of incapacity twelve to thirteen times a month, lasting one to two days per flare-up episode. Plaintiff's doctor also stated that Plaintiff "w[ould] not be able to perform any job functions during flare-up episodes." June 10, 2022 FMLA Certification, First File at 112–13, ECF No. 22-4 at 42–22-5 at 2. At the end of June 2022, Huebl recorded that Plaintiff had failed to report on-site as required by her alternate accommodation and that she had not performed the essential functions of her job while teleworking. Huebl revoked her approval for telework, effective July 3, 2022, and Plaintiff was expected to report on-site full time. Plaintiff did not report to work—instead, she exhausted her FMLA leave and utilized leave donated to her by coworkers via a leave transfer program.

      Mid-September 2022, Huebl recorded that Plaintiff still had not reported to work and that her absences were "causing extreme hardship." Sept. 14, 2022 Mem. for Molumby, First File at 181, ECF No. 22-7 at 13–14. He further stated: "You have been provided considerable time to resolve your medical conditions, yet you continue to be absent from duty 100% of the time. The difficulty of this situation is compounded by the fact that these absences have no foreseeable end." *Id.* Plaintiff provided a note from a new medical professional dated September 21, 2022, which stated that Plaintiff's medications were being adjusted and estimated that Plaintiff may be able to return to work in six weeks. Based upon that medical note, Huebl granted Plaintiff discretionary leave without pay until November 1, 2022. Plaintiff subsequently provided two more medical notes in October 2022—the first revised Plaintiff's estimated return-to-work date to January 2, 2023 and the second analyzed Plaintiff's ability to perform the essential functions of her role as a GS-07 in Receiving, concluding that Plaintiff could not perform certain functions even with Plaintiff's requested accommodation of fulltime telework. Another medical note, dated December 30, 2022, stated that Plaintiff's psychological symptoms still prevented her from

being in an office environment and revised Plaintiff's estimated return-to-work date to July 2, 2023.  Ultimately, Plaintiff was removed from federal service on February 28, 2023.

Plaintiff filed two formal complaints with the Army Equal Employment Opportunity Office: (1) ARRIA22MAR01855, alleging a failure to accommodate, filed April 14, 2022; and (2) ARRIA23OCT00026, alleging reprisal on the basis of disability, filed Oct. 28, 2022.  Plaintiff's Complaint, filed May 12, 2023, alleges both failure-to-accommodate and retaliation claims.  Compl. 2.  Plaintiff alleges that Defendant denied her a reasonable accommodation on or about February 28, 2022, and that she was "downgraded" from a GS-09 position to a GS-07 position in January 2022.  *Id.*  Plaintiff's case was originally filed in the Northern District of Illinois and subsequently transferred to this Court upon Plaintiff's unopposed motion.  *See* Sept. 14, 2023 Min. Entry (Kness, J.).  After Defendant moved for summary judgment as to Plaintiff's Complaint, Plaintiff explicitly waived any claim that her move from GS-09 to GS-07 was illegal and stated that she had "decided to proceed only on her failure to accommodate claim."  Resp. Mot. Summ. J. 32 n.7, ECF No. 25.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant in a summary judgment motion bears the initial burden of production; it must point the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the nonmovant bears the ultimate burden of persuasion on a particular issue, however, the movant can meet its initial burden by showing "that there is an absence of evidence to support the

7

nonmov[ant]'s case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quotation marks omitted). Once the movant discharges its initial burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

The court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute is insufficient to defeat a motion for summary judgment," *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quotation marks omitted), as "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

II.   Analysis

As an initial matter, the Court notes that the bounds of Plaintiff's legal claims are unclear. Some of Plaintiff's arguments and evidence do not comport with her explicit decision to "proceed only on her failure to accommodate claim." Resp. Mot. Summ. J. 32 n.7. For example, Plaintiff argues that the reasons which Huebl provided for transferring Plaintiff from Inventory to Receiving were "not genuine" and that Huebl "inexplicably decided to reassign Plaintiff who he knew would not be able to perform the duties in Receiving." *Id.* at 30; *see also* Molumby Decl. ¶ 11, ECF No. 25-1 ("At the time that Mr. Hueb[]l transferred me to Receiving, he was aware that I had submitted a request for reasonable accommodation to telework full time with

8

supporting medical documentation. I believe Mr. Hueb[]l transferred me to Receiving so that I would not be able to be accommodated with telework."). These suggestions that Huebl's decision to transfer Plaintiff was improperly motivated by Plaintiff's desired accommodation are a poor fit for her failure-to-accommodate claim, at least in part because "discriminatory intent is not an element of an [Americans with Disabilities Act ("ADA")] failure-to-accommodate claim." *Kinsella v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1103 (7th Cir. 2023).[4] Simply put, what was in Huebl's heart and mind is essentially irrelevant to Plaintiff's claim that Defendant failed to reasonably accommodate her disabilities.

Plaintiff alleges that Defendant failed to reasonably accommodate her disabilities on or about February 28, 2022. Compl. 2–3. "To establish a claim for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). Defendant does not contest awareness of Plaintiff's disabilities. *See* Mot. Summ. J. 23. In her response to Defendant's Motion for Summary Judgment, Plaintiff states that she is challenging the denial of her request of a "reasonable disability accommodation to telework in February/March of 2022." Resp. Mot. Summ. J. 1. Plaintiff made multiple requests for the accommodation of fulltime telework in February and March of 2022 and she was also transferred to a new role in March 2022, namely the GS-07 in Receiving position—her ambiguity regarding which accommodation request is the basis for her claim is confounding at this stage of the case. The qualified-

---

[4] Although Plaintiff's claim is brought under the Rehabilitation Act, the Court considers cases analyzing accommodations under the Americans with Disabilities Act because the analysis of Plaintiff's failure-to-accommodate claim is the same under both statutes. *See, e.g.*, *Swain v. Wormuth*, 41 F.4th 892, 897 (7th Cir. 2022) ("The Rehabilitation Act expressly incorporates the standards and procedures applicable to claims brought under the Americans with Disabilities Act . . . .") (citing 29 U.S.C. § 794(d))).

9

individual inquiry is not limited to the job that an employee held at the time that a request for accommodation is made as the inquiry could extend to jobs the employee "desire[d]." *See* 42 U.S.C. § 12111(8). Plaintiff could be referring to a requested accommodation of: (1) fulltime telework as a GS-07 in Inventory, prior to her transfer to Receiving; (2) fulltime telework as a GS-07 in Receiving, after her transfer to Receiving; or (3) a transfer back to her role as a GS-07 in Inventory along with fulltime telework, after her transfer to Receiving.

The first option, failure to allow her to telework fulltime while working as a GS-07 in Inventory and prior to her transfer to Receiving, would be a non-starter because she was allowed to telework fulltime during that period. Although Plaintiff's requests for permanent fulltime telework as an accommodation were consistently denied, she was repeatedly allowed to telework fulltime in the months prior to February 2022 as a temporary alternative accommodation. *See* July 13, 2021 Mem. for Record, First File at 156; Aug. 16, 2021 Mem. for Record, First File at 154, ECF No. 22-16 at 17–18; Oct. 28, 2021 Mem. for Record, First File at 152, ECF No. 22-16 at 15–16; Feb. 1, 2022 Mem. for Record, First File at 150, ECF No. 22-16 at 13–14. Even on February 28, 2022, she was granted another extension of her temporary accommodation of fulltime telework. Feb. 28, 2022 Mem. for Record, First File at 148, ECF No. 22-16 at 11–12. Plaintiff cannot claim a lack of accommodation during this period when she was allowed to telework fulltime, as she repeatedly requested.

The second option is also a non-starter because Plaintiff explicitly concedes that that "she could not perform the essential functions of her position remotely in Receiving." Resp. Mot. Summ. J. 1; *see also* Mar. 3, 2022 Mem. for Record, Second File at 36 (denying Plaintiff's request for fulltime telework as a reasonable accommodation because the GS-07 position in Receiving required a physical presence). An inability to perform a role's essential functions,

10

even with accommodation, means that individual is not qualified and the failure to provide that employee with her requested accommodation is not actionable. *See* 42 U.S.C. § 12111(8).

Therefore, only the third option allows Plaintiff to get off the starting blocks. After Plaintiff had been transferred to Receiving, she requested that "the involuntary reassignment to Central Receiving be cancelled" and that her request for fulltime telework as a reasonable accommodation be approved. Aggrieved's Statement, Second File at 21, ECF No. 22-29 at 21; *see also* Resp. Mot. Summ. J. 2 ("Because Plaintiff could remotely perform the essential job functions of Supply Technicians assigned to Inventory, where she had been continuously assigned to for years, she was a qualified individual with a disability . . . ."). The Court construes Plaintiff's failure-to-accommodate claim as an assertion that she was qualified for her GS-07 in Inventory role and that the denial of her requests to be transferred back to that position and to continue to telework fulltime in that role were the denial of a reasonable accommodation.

With that framing in mind, the Court turns to the parties' dispute regarding whether Plaintiff was a qualified individual. Mot. Summ. J. 31–32; Resp. Mot. Summ. J. 29–31. "[I]f an employee's medical restrictions prevent the employee from performing an essential job function with reasonable accommodation, the employee is not a qualified individual." *Leibas v. Dart*, 108 F.4th 1021, 1025 (7th Cir. 2024). The plaintiff must "provide sufficient evidence to create a genuine dispute of material fact that she can perform the essential functions of her position." *Id.* The Seventh Circuit has articulated a two-step inquiry for applying the ADA's definition of qualified individual:

> The first step asks whether the plaintiff has the basic qualifications required for the position, such as educational prerequisites, employment experience, skills, or licenses. The second step asks whether the plaintiff can perform the essential functions of the job with or without reasonable accommodations. To determine whether a job duty is an essential function of the position, we consider the employer's judgment, the employee's written job description, the amount of time

11

>   the employee spends performing that function, the consequences of not requiring the employee to perform the function, and the experiences of past and current workers.

*Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021); *see also* 42 U.S.C. § 12111(8) (providing that the essential-functions determination requires consideration of the employer's judgment and its written job description for the position, if available). Courts "presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 679 (7th Cir. 2010). The first step is not at issue as Plaintiff's performance was satisfactory prior to 2020 and the onset of her disabilities. *See Conners*, 984 F.3d at 1261.

Defendant's position description, which was the same for an employee assigned to Receiving or Inventory, states that a GS-07, for approximately seventy percent of the workday, "[d]etermines appropriate courses of action upon notification of adverse impacts to program assets . . . that may require opening boxes and consolidating sets"; is "[r]esponsible for ensuring contingencies affecting the receipt or shipment of stocks have been considered in order to meet shipping schedules"; "[p]repares shipping documents"; "[a]ssists lower-graded supply clerks in analyzing stock histories and resolves problems that they have been unable to solve"; "[c]onducts extensive fact gathering to resolve discrepancies"; and "[a]ssist[s] customers, issue[s] keys/badges, process[es] visitors, monitor[s] cameras, and perform[s] gate operations," among other responsibilities. Army Position Description: Supply Technician GS 2005 07, First File at 85–89, ECF No. 22-4 at 17–21. The remaining thirty percent is spent on tasks like preparing reports, compiling data, and analyzing that data. *See id.* Huebl annotated this position description in February 2022, identifying many functions which could not be performed while

12

teleworking. Annotated Army Position Description: Supply Technician GS-2005-07, Second File at 52–59, ECF No. 22-29 at 52–22-30 at 7.

Turning to Plaintiff's coworkers' experiences and the consequences of Plaintiff's lack of physical presence, her coworkers described how Plaintiff's fulltime telework forced them to take the additional step of scanning certain physical information to enable Plaintiff to virtually process that information. Locklear Investigative Summary, Second File at 139 (stating that while Plaintiff was teleworking fulltime in Inventory, her coworkers "had to transfer information back and forth between [Plaintiff] and their physical counters" and that Plaintiff "was only processing basic balanced inventories and low dollar value adjustments that did not require further research or reconciliation"). Her coworkers thought that she was given favorable or preferential treatment. *Id.* at 139–40.

Plaintiff "outright disputes that she could not have performed the essential functions of her position, or that anyone else had to perform the essential functions of her position." Resp. Mot. Summ. J. 30. She avers that at no point during her time in Inventory did she "have to open boxes, consolidate sets, move supply and inventory documents around the facility, assist customers in person, issue badges, process visitors, or perform gate operations," and further avers that she did not have to physically exert herself nor "trace misplaced items," because "these duties were performed either by wage grade employees or by Supply Technicians in Receiving." Molumby Decl. ¶ 5. She emphasizes that this nonperformance of some functions listed in the GS-07 written job description predated the COVID-19 pandemic and the onset of her disabilities, noting that she suffered no consequences because those functions were performed by employees in Receiving. Resp. Mot. Summ. J. 30.

13

Viewing the evidence in Plaintiff's favor, Plaintiff has shown that the written job description for a GS-07 is not particularly insightful as to the essential functions for a GS-07 because that description applied to roles in both Inventory and Receiving. Further, crediting Plaintiff's affidavit's description of her pre-pandemic performance, *see* Molumby Decl. ¶ 4, creates a material dispute regarding whether Plaintiff was only able to perform the essential functions of her role in Inventory because her coworkers, after physically returning to the office post-pandemic, scanned certain physical information and sent it to her computer. The Court cannot conclude as a matter of law that Plaintiff was not qualified to perform the GS-07 in Inventory role when allowed to telework fulltime.[5]

Yet even assuming that Plaintiff was a qualified individual for the GS-07 in Inventory role because that position's essential functions did not require a physical presence, she has not

---

[5] Defendant also argues that Plaintiff's own doctors concluded that she could not perform essential functions of her role, and that it was entitled to rely on those medical opinions to conclude that Plaintiff was not qualified. *See* Mot. Summ. J. 31–32; Reply Mot. Summ. J. 13–14. Employers are "entitled to rely on a physician's recommendation that the employee is not able to safely perform an essential function of his job." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020). Plaintiff's medical professionals eventually concluded that she could not safely perform the essential functions of the GS-07 in Receiving role, even if teleworking fulltime. *See* Mar. 25, 2022 FMLA Certification, First File at 471–72 (stating Dr. Gandra's opinion that Plaintiff was "unable to perform any job functions at this time"); June 10, 2022 FMLA Certification, First File at 112–13 (stating Dr. Gandra's opinion that Plaintiff would "not be able to perform any job functions during flare-up episodes," where such flare-ups would occur twelve to thirteen times per month and last for one to two days per episode); Oct. 31, 2022 Medical Excuse/Release, First File at 106, ECF No. 22-4 at 38 (stating Dr. Shapleigh's opinion that "[Plaintiff] is unable to perform the following tasks, even with accommodation: Detect problem areas in central receiving . . . Assist lower-graded supply clerks in analyzing stock histories . . . Conduct extensive fact gathering to resolve discrepancies in central receiving"). Yet Defendant gets the timeline wrong when pointing to Dr. Shapleigh's opinion, *see* Mot. Summ. J. 31 ("In October of 2021, Dr. Clarie Shapleigh . . . ."), because that opinion was offered not in October 2021 but instead in October 2022, after Plaintiff had been moved to Receiving and her request for fulltime telework had been finally denied, *see* Oct. 31, 2022 Medical Excuse/Release, First File at 106. As of February 2022, Plaintiff's medical professionals' opinion was that she could perform the essential functions of her GS-07 in Inventory role if given the accommodation of fulltime telework. *See* Feb. 10, 2022 Medical Information Form, Second File at 189, ECF No. 22-33 at 2–5 (stating Dr. Gandra's opinion that Plaintiff was "able to perform all the essential job functions if she [wa]s in a home setting working remotely"). Defendant does not show that it relied upon Plaintiff's medical professionals' opinions regarding her ability to perform her role's essential functions when denying Plaintiff's requested accommodation in February or March 2022. Plaintiff's medical professionals' subsequent opinions are not entitled to the same conclusive weight that they would be owed if the opinions had been rendered prior to the at-issue accommodation request and Defendant could show that those opinions factored into its decision to deny that request. *Cf. Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 504 (7th Cir. 2020) (finding irrelevant the declarations of doctors that examined the employee "*after*" the employer denied the employee's accommodation request).

14

shown that a reasonable finder of fact could conclude that Defendant's failure to return her to that role constituted a failure to accommodate her disabilities. When an employee's disabilities prevent her from performing the essential functions of her current position, a transfer to another position may be a reasonable accommodation under the ADA. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) ("Reassignment to a vacant position may be a reasonable accommodation under the statute." (citing 42 U.S.C. § 12111(9)(B))); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). However, this requirement of reassignment extends "only to vacant positions." *Gile*, 95 F.3d at 499. Employers do not have to "'bump' other employees to create a vacancy so as to be able to reassign the disabled employee" nor "create a 'new' position for the disabled employee." *Id.* "It is the employee's burden to demonstrate that a vacant position exists." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015). Similarly, "employers do not have to maintain positions or job structures that provide reasonable accommodations if the employer finds, for legitimate business reasons, that the position or job structure should be eliminated." *Id.* at 855–56; *see also Gratzl*, 601 F.3d at 680.

      Here, Plaintiff has not met her burden of demonstrating that, while requesting to be transferred from the GS-07 in Receiving role and relieved from performing that role's in-person essential functions, there was a vacancy for a GS-07 in Inventory. *See Dunderdale*, 807 F.3d at 856. Despite Plaintiff declining a job search upon advice from her union representative, such a search was conducted and returned no matches, *i.e.*, no fulltime telework positions with Defendant for which Plaintiff would have been qualified. Nov. 4, 2022 Email from Huebl to Molumby, First File at 590–91, ECF No. 22-20 at 3–4. Plaintiff adduces no contrary evidence

15

regarding vacant positions and therefore fails to carry her burden of demonstrating the existence of a vacancy to which she could have been transferred as an accommodation.

The other implication of Plaintiff's argument is that her old job as a GS-07 in Inventory was the vacancy to which she should have been allowed to transfer and that Huebl's assessment that her old role was no longer needed was illegitimate. Huebl's stated reason for moving Plaintiff and Gina Siemers, another GS-07 employee assigned to Inventory, from Inventory to Receiving was that Receiving was failing whereas Inventory was performing well. *See* Mar. 2, 2022 Email from Huebl to Molumby, Second File at 29; Huebl Decl. ¶¶ 11–13. Plaintiff's only attempt to undermine this reasoning as illegitimate is her assertion that other employees could have been reassigned instead of her. *See* Resp. Mot. Summ. J. 30–31. Defendant points out that Plaintiff oversimplifies the record and organizational structure of Huebl's department. Reply Mot. Summ. J. 11–12, ECF No. 27. After Plaintiff and Siemers had been moved to Receiving, the three remaining employees in Inventory were either GS-09 or GS-11. *See* Huebl Org. Chart, Second File at 152, ECF No. 22-31 at 76. These employees held different positions with different essential functions, *see, e.g.*, Army Position Description: General Supply Specialist GS-2001-09, Second File at 47–51, ECF No. 22-29 at 47–51, making them legally inadequate comparators, *cf., e.g.*, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) ("Employees are similarly situated if they are directly comparable in all material respects."). Further, there is no evidence that another employee was brought in to replace Plaintiff or Siemers as a GS-07 in Inventory. *See* Huebl Org. Chart, Second File at 152; *cf. McCann v. Badger Mining Corp.*, 965 F.3d 578, 593–94 (7th Cir. 2020) (analyzing whether the temporal proximity between the elimination of the plaintiff's position and the transfer of the plaintiff's coworker to the plaintiff's department demonstrated pretext).

At bottom, Plaintiff's claim is little more than the impermissible suggestion that Defendant should have "bumped" her coworkers, created a vacancy for her, or maintained a position that was no longer needed to achieve Defendant's mission. Defendant was not required to ignore the demands of its mission and maintain a phased-out position to grant Plaintiff her desired accommodation of fulltime telework as a GS-07 in Inventory. *See Dunderdale*, 807 F.3d at 855–56; *Gile*, 95 F.3d at 499. Defendant's refusal to let Plaintiff continue teleworking fulltime as a GS-07 in Inventory was not a failure to reasonably accommodate Plaintiff's disabilities.

## CONCLUSION

Defendant's Combined Motion and Memorandum in Support of Her Motion for Summary Judgment, ECF No. 22, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 4th day of March, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
